WALKER, J., dissenting, and HOKE, J., concurring in dissenting opinion.
It is contended by the learned counsel for the enterer that there are admissions in the record that the protestants have no title to the land entered, and that, under the ruling in Johnson (57)v. Wescott, 139 N.C. 29, the protest should be dismissed and the enterer permitted to take out his grant. We fail to find any such admission in the record. It is admitted that the protestants on the trial failed to connect themselves by evidence with the possession of Ben Etheridge, Barbara Frost, or Ned Bowser, but that is far from being an admission of record that protestants have no title or possession of the land in controversy and that it is open to entry. The evidence tends to prove that protestants are in actual possession of the land, and were at the time the entry was made; that there was a field cultivated on it in 1871; that Barbara Frost cleared the land and was in actual possession of it for twenty-five years; that Ben Etheridge moved on the land thirty years ago, and that Ned Bowser had been cutting all over the land for the same length of time. There is other evidence which it is unnecessary to discuss, in the view we take of the case. Further reflection convinces us that we should adhere to our decision in Walker v. Carpenter, *Page 42 144 N.C. 674, by which the burden of proof is placed upon the enterer to show, at least so far as the protestant is concerned, that the land is unappropriated and open to entry. The question had never been presented before, nor anything analogous to it that we can find. We, therefore, cannot "travel with ease along the highway of precedent," and must be guided by what we think is a proper construction of the statute and the evident intent of the General Assembly in enacting it. It is a source of satisfaction to feel that., if we are in error, that body will doubtless correct it in due season.
In the first place, let it be understood that we do not intend to reverse the ordinary rule of proof in an action to try title to land, as this is not a civil action within the meaning of the statute. It is a simple proceeding, under the entry laws, to ascertain if the enterer, so far as the protestant only is concerned, has a right to enter the land (58) described in the entry. It is well to note the history of the protest section of the entry laws as indicating the purpose of the General Assembly to relieve what was possibly a hardship upon many land-owners of the State, for it is fundamental that a statute should be so construed, if reasonably possible, as to give effect to the remedy intended. Prior to the amendment to the entry laws, when the protest proceedings were introduced, an entry could not be protested. The first enterer, by paying the small stipend required by the statute, after survey, secured his grant from the State and became the prima facie owner of the land. The person who contested his right had to bring suit to vacate and set aside the grant, or, if sued himself, after the grant had been put in evidence, had still to assume the burden of making out an indefeasible title. And this is the law now, where the grant has been issued and legal proceedings commenced. Thus it was in the power of land speculators to enter lands generally without the least investigation of the ownership, and, by paying a mere pittance for their grants, to put the apparent owners and possessors of the lands to proof of their title. If they failed upon some slight technicality, these enterprising land hunters acquired title. This condition of the law continued from the earliest times up to 1883, when for the first time the right to protest an entry was given and provision made for establishing in the Superior Court the rights of the enterer before grant issued. Section 2765 of The Code.
We are unable to find any trace of such proceeding in the legislation of the State prior to that time. When the State had large bodies of public lands open to entry, the old law worked no great hardship, for the location of those lands was well known. But now that the State owns practically no bodies of land that are open to entry, only timber hunters, and not the State, are benefited by adhering to it. By incurring *Page 43 
the trifling cost of an entry, and without incurring any expense (59) whatever of investigating titles, the enterer was enabled, not only to put the owner of land to the great expense and burden of demonstrating the title in court, but to avail himself of any defect which lapse of time, death of witnesses, or lost deeds and records might occasion. To remedy this great hardship must have been the purpose of the General Assembly in adopting the provisions of The Code of 1883. What else could have been the prompting motive for such legislation? If we still place upon the protestant the burden of making out his title in order to defeat a simple entry, it seems to us we defeat the only purpose of the act, for the protestant then is in no better position in contesting an entry than he would be in seeking to vacate and set aside a grant. A grant is the solemn deed of the State, under its great seal, and he who attacks it and seeks to vacate it should assume the burden of proof, for the presumption is that the sovereign owns the land she undertakes to convey. But, while it is presumed the State once owned the lands within its borders, there is no presumption that they remain vacant and are open to entry. Laying an entry is the act of the enterer, and not the act of the State, and there is no presumption that the lands he appropriates are open to entry. "So far as the State is concerned, it is a matter of indifference who appropriates the land, provided it be paid for." Ashley v. Sumner,57 N.C. 123. `It is not material to the State what vacant land is granted; but such entries are not allowed to interfere with the rights of other citizens." Pearson, C. J. in McDiarmid v. McMillan,58 N.C. 31. We quote these extracts for the purpose of showing the State's indifference to entries of land, while on the contrary the interests of the citizen possibly gave him a very lively interest in them. It was, therefore, we think, in the interest of the citizens who own and occupy land that the act of 1883 was enacted, to the end that the right to make the entry may be established before a grant is issued. This act was repealed by the next General Assembly and the old law resorted. Chapter 132, Laws 1885. But we find that the General Assembly of 1891 repealed the repealing act, leaving the law (60) as enacted in The Code of 1883 and as it now appears in the Revisal of 1905.
We can see no reason for restoring the act of 1883 unless it was in some measure intended to protect a bona fide claimant and possessor of land against the hardships entailed by indiscriminate entries, and to compel careful investigation before making entries. If we still place the onusprobandi on the protestant in his contest with the enterer, the act of 1883 might as well not have been restored.
It is contended that we are compelling the enterer to prove a negative — to produce proof exclusively within the knowledge of the protestant *Page 44 
and practically to perform an impossibility by showing that no one has any interest in the land entered.
The first proposition is discussed in Walker v. Carpenter, and we will not repeat here what is there said. In that case we attempted to analyze the statute and to show that by its terms the claimant must establish on the trial his right to enter the land. With due deference to the opinions of others, we think it would be to entirely destroy the beneficent purpose of the act to hold that this requirement can be fulfilled by putting in evidence a simple entry, the ex parte act of the one who offers it.
Neither are we compelling the enterer to produce proof exclusively within some one else's knowledge, or to perform an impossibility.
The notice required by the act is intended to inform the neighborhood that the enterer claims a right to enter a certain piece of land, the boundaries of which are given. If no one protests against such right, the grant issues as a matter of course, if the statute in other respects has been complied with. If a protest is filed, then the enterer must make good his right as against the protestant only, and not against all (61) the world. If, in response to the notice, only one person protests, the law presumes that the enterer has infringed upon the rights of no one else. Under our present registration act, which bears the name of our learned brother, Mr. Justice Connor, it is as possible for the enterer to run out the adjoining boundary of the protestant and to investigate his title deeds as it is for the protestant to do it himself. Without the registration law of 1885 we would be compelled to admit the force of the contention. Since then the record of title to land is an open book, free to the examination of all, and we suspect this consideration had something to do with the passage of the act of 1891. We think there is a marked distinction between this case and the cases cited in behalf of the enterer.McCormick v. Monroe, 46 N.C. 13, and Board of Education v. Makely,139 N.C. 31. The former was decided thirty years before the act we are construing was passed, and is entirely consistent with what is hereinbefore said in respect to the burden of proof when a grant is attacked. The case further holds that where there is an exception in a grant, the onus of proof lies upon the party who would take advantage of the exception, in which ruling we fully concur.
The Makely case was likewise an attack upon a grant issued by the State, and the decision is in full accord with what we have herein said in respect to grants. In our opinion, the ex parte act of an individual is not to be invested with that presumption of rightfulness which attends the act of the State, and there is nothing in either case which militates against this view, as we read them. We can say the same of McNamee v. Alexander,109 N.C. 242, in which this Court refused to enjoin the Secretary of State from issuing a grant upon the ground that the plaintiff *Page 45 
had a complete remedy given by section 2786 of The Code, now section 1748 of the Revisal. In conclusion, we will say that, in adhering to our former opinion, we are not laying down a rule of proof of our own invention, but are giving effect to legislation which has never (62) been construed before. The effect of the decision can only be to make those who undertake to enter land more particular in making a preliminary investigation of the title to the land they seek to appropriate.
New trial.